# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIN JOHN CABRERA, | CASE NO.  1:10-cv-00611-LJO-MJS (PC) |
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| v. | (ECF No. 1) |
| THOMAS M. MADDOCK, et al., | |
| Defendants. | AMENDED COMPLAINT DUE WITHIN THIRTY (30) DAYS |

## SCREENING ORDER

**I.    PROCEDURAL HISTORY**

On April 8, 2010, Plaintiff Elvin John Cabrera, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff's Complaint is now before the Court for screening.

**II.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C.

§ 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

### III.   SUMMARY OF COMPLAINT

The Complaint names the following individuals as Defendants: (1) Thomas M. Maddock, Director, California Department of Corrections and Rehabilitation (CDCR); (2) Fernando Gonzalez, Warden, California Correctional Institution (CCI); (3) J. Gentry, Lieutenant, Institution Gang Investigation (IGI), CCI; (4) M. Carrasco, Associate Warden, CCI; (5) D. Zanchi, Facility Captain, CCI; (6) L. Schulteis, Chief Deputy Warden, CCI; (7) L. Gutierrez, Investigative Captain, CCI; (8) N. Grannis, Chief, Inmate Appeals; (9) E. Sanchez, IGI Correctional Sergeant, CCI; (10) L. Machado, IGI Correctional Sergeant, CCI; (11) M. Buechner, Special Service Agent (SSA), CDCR; (12) D. Jakanosky, SSA, CDCR; (13) B. Kingston, SSA, CDCR; (14) T. Casey, Appeals Coordinator, CCI; (15) T. Crouch, Assistant IGI Correctional Officer, CCI; and (16) ten John Does.

Plaintiff alleges the following:

On April 3, 2008, prison guards on the IV-A yard were assaulted. Plaintiff was in his cell during the attack and was not involved in the incident. In retaliation for the assault, prison officials conducted a large scale search targeting Hispanic inmates on the IV-A yard. The selected prisoners were removed from their cells, photographed, and their personal belongings searched. On April 11, 2008, Plaintiff, who is Hispanic, was placed in administrative segregation pending validation as a Mexican Mafia associate. (Compl. at 4.) Four drawings were found among Plaintiff's belongings. Defendant Sanchez reviewed the artwork and discovered multiple Mexican Mafia references. Sanchez concluded that two of the drawings were made by validated members of the gang. (Id. at 25, 29-30, 35-36.)

Sanchez conducted a pre-validation interview with Plaintiff on April 14, 2008. Plaintiff stated that the drawings were for artistic purposes only, and, because he had been enrolled in the art program for three years, were just some of the many art copies he had. Plaintiff told Sanchez that he was unaware of any gang references and did not know the artists. Plaintiff also told Sanchez that he was given no warning that the images were contraband or could be used as justification for gang validation. (Id. at 5.) Defendant Gentry submitted Plaintiff's validation package on April 18, 2008. (Id. at 7) On May 13, 2008, Defendants Buechner, Jakanosky, and Kingston signed the order validating Plaintiff as an associate of the Mexican Mafia. (Id. at 5, 37.) Plaintiff had no documented gang activity or affiliation prior to being validated. (Id. at 6.)

"On June 5, 2008, Plaintiff appeared before an institutional classification committee (ICC) for a program determination." (Id. at 5.) The committee consisted of Warden

3

Carrasco, Cpt. Zanchi, Sgt. Machado, Sgt. Ortega, and others. Plaintiff presented an inmate appeal stating that there was no documented association between himself and the Mexican Mafia. Plaintiff explained to the committee that validation would have dangerous consequences: he would be forced to adopt gang lifestyle and be exposed to gang enemies. Plaintiff was placed in segregated custody because of his concerns. Defendant Machado interviewed Plaintiff in response to the appeal. (Id.) Machado instructed Plaintiff to submit an autobiography and re-housed Plaintiff. (Id. at 6.)

Plaintiff attended another ICC housing hearing on August 14, 2008 and reiterated his safety concerns and his belief that the validation was erroneous. The committee was not persuaded. Defendant Zanchi threatened to send Plaintiff to general population in the Security Housing Unit (SHU) if he did not reveal gang information. Plaintiff's request for a polygraph was denied. (Id.)

Plaintiff was interviewed by Defendant Couch in response to one of several inmate appeals contesting the validation. Plaintiff said that he received no warning that the drawings in question were considered gang related. He told Crouch he had no gang ties and nothing relied on for validation demonstrated otherwise. (Id. at 7.) Crouch stated that he believed Plaintiff was not actually a gang associate. He explained that in response to the April 3, 2008, assault on prison guards, gang investigators had been sent in to clear IV-A yard "of anybody who had even the least amount of evidence to" justify validation. He told Plaintiff that thirty-one inmates had been targeted. Crouch also explained that gang investigators do not specify what art is prohibited so they can catch individuals who choose to posses it. (Id. at 8.)

Plaintiff has appeared before classification committees to review his validation. The

4

committee found Plaintiff's autobiography to be insufficient, but did not explain why. The committee has repeatedly denied Plaintiff's request for a polygraph. Plaintiff can not divulge information regarding the Mexican Mafia because he is not a member and thus has no knowledge. The review hearings "are conducted in a rote and perfunctory manner, as the committees do not make any individualized finding as to whether or not Plaintiff is truly a gang member/associate . . . ." (Id.) The Defendants refused to acknowledge evidence demonstrating that Plaintiff is not affiliated with the Mexican Mafia. (Id. at 10.)

Plaintiff asserts that he was validated as a gang member without justification and denied meaningful review in violation of his right to due process. He also claims that the decision to target him for investigation was based on his race in violation of his right to equal protection. The Complaint also includes an Eighth Amendment claim and an unspecified claim for the violation of Plaintiff's First Amendment rights.

## IV. ANALYSIS

### A. Section 1983

To state a claim under Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by

5

mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 1949-50.

### B. Section 1983 Linkage Requirement

Under § 1983, Plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). This requires the presentation of factual allegations sufficient to state a plausible claim for relief. Iqbal, 129 S.Ct. at 1949-50; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Id.

The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978). Government officials may not be held liable for the actions of their subordinates under a theory of respondeat superior. Iqbal, 129 S.Ct. at 1948. Since a government official cannot be held liable under a theory of vicarious liability in § 1983 actions, Plaintiff must plead sufficient facts showing that the official has violated the Constitution through his own individual actions. Id. at 1948. In other words, to state a claim for relief under § 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

The Complaint contains no factual allegations linking Defendants Maddock, Gonzalez, Shulteis, Gutierrez, and Grannis to the alleged violation of Plaintiff's rights. These individuals are identified as Defendants but not associated with any of the acts in Plaintiff's narrative of events. Plaintiff merely states that he "believes and therefore alleges on information and belief that each Defendant is in some manner responsible for the constitutional violations alleged . . . ." (Compl. at 2.) Simply describing a defendant as having participated in "some manner", without specifying exactly how he deprived Plaintiff of a right, is not sufficient to state a claim. Sweeping conclusory allegations will not suffice; Plaintiff must instead "set forth specific facts as to each individual defendant's" deprivation of protected rights. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir.1988). In some cases Plaintiff indicates that these Defendants are responsible by virtue of their supervisory positions. The mere fact that they may have supervised the individuals responsible for a violation is not enough. The Defendants may only be held liable in a supervisory capacity if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

Without alleging facts showing that these Defendants participated in the violations alleged, Plaintiff has failed to state a cognizable claim against them. The Court will provide an opportunity to amend. Plaintiff must set forth sufficient facts showing that each Defendant personally took some action that violated Plaintiff's constitutional rights.

Additionally, "John Doe" defendant liability must also be properly alleged. A plaintiff may use "Doe" designations to refer to defendants whose names are unknown; however, he must number them in the complaint, e.g., "John Doe 1," "John Doe 2," so that each numbered John Doe refers to a different specific person. Plaintiff also must identify how

7

each such named Defendant, including those named as Doe, is liable for a constitutional violation. Dempsey v. Schwarzenegger, 2010 WL 1445460, *2 (N.D. Cal. Apr. 9, 2010); Schrubb v. Tilton, 2009 WL 3334874, *2 (N.D. Cal. Oct. 14, 2009).

Plaintiff identifies ten John Doe Defendants without alleging facts linking the Does to the conduct alleged. The Court can not determine the viability of Plaintiff's claims against the Doe Defendants without factual allegations distinguishing each individual Doe and describing their conduct.

In his amended complaint, Plaintiff shall either name the defendants involved or list the Doe defendants involved and describe what each did to violate his rights. If Plaintiff can only list these defendants as John Doe, Plaintiff should allege specific acts that each Doe defendant did, such as "John Doe 1 did X" and "John Doe 2 and 3 did Y." Alexander v. Tilton, 2009 WL 464486, *5 (E.D. Cal. Feb. 24, 2009).

    **C.**    **Fourteenth Amendment**

        1.    Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff can establish an equal protection claim by showing that the defendant has intentionally discriminated against him on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001); Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

Equal protection claims alleging disparate treatment or classifications are subject to a heightened standard of scrutiny when they involve a "suspect" or "quasi-suspect" class, such as race or national origin, or when they involve a burden on the exercise of

fundamental personal rights protected by the Constitution. <u>Cleburne</u>, 473 U.S. at 440. The heightened standard of strict scrutiny requires the State to show that the classification is narrowly tailored to serve a compelling government interest. <u>Grutter v. Bollinger</u>, 539 U.S. 306, 326 (2003).

Plaintiff alleges that he is Hispanic. Race and ethnicity are suspect classes that trigger strict scrutiny. <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974) ("Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race"). Plaintiff alleges that guards on the IV-A yard were assaulted and that prison officials searched inmates and cells for evidence of gang affiliation in response. Plaintiff observed that Hispanic inmates alone were subject to the search. Defendant Crouch told Plaintiff that the purpose of the search was to discover any evidence of inmates connected to gangs and that thirty-one inmates were targeted for validation.

Although it is clear that Plaintiff believes the prisoners searched were targeted because of their race, the factual allegations indicate that race may not have been a motivating factor. Defendant Crouch allegedly told Plaintiff that the search was in response to an assault on prison guards, for the purpose of discovering evidence of gang affiliation, and that thirty-one inmates were targeted.

Plaintiff's personal belief that the search was motivated by race by itself is not sufficient to state a claim. The fact that Hispanics alone were targeted is significant. However, to state an equal protection claim, an amended complaint must offer details known to Plaintiff regarding the events leading up to the search and the search itself. Plaintiff should provide enough circumstantial detail, such as statements or specific

9

conduct, to support his conclusion that race was a motivating factor in the search rather than a coincidence. See Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003) ("To state a claim for violation of the Equal Protection Clause, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class.") Plaintiff's equal protection claim also fails because he does not specify which of the Defendants, motivated by race, ordered or carried out the search. Leer, 844 F.2d at 634.

The Court will grant Plaintiff an opportunity to amend his equal protection claim. In order to state a cognizable claim, Plaintiff must clearly allege facts that support his conclusion that the search at issue was motivated by race. The amended complaint must also include allegations linking a named Defendant to the alleged violation.

        2.    Due Process

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Assuming that confinement in the SHU for an indeterminate period implicates a

10

liberty interest, Wilkinson v. Austin, 545 U.S. 209, 223–24 (2005) (finding a liberty interest in avoiding indefinite confinement in Ohio's "Supermax" facility), Plaintiff has not demonstrated that he was denied any of the procedural due process protections he is guaranteed under federal law. Assignment to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)).  As a result, prisoners are entitled to the minimal procedural protections of adequate notice, an opportunity to be heard, and periodic review. Bruce, 351 F.3d at 1287 (citing Toussaint v. McCarthy, 801 F.2d 1080, 1100–01 (9th Cir. 1986), abrogated in part on other grounds by Sandin, 515 U.S. at 472); Hewitt, 459 U.S. at 477 n. 9. In addition to these minimal protections, there must be "some evidence" supporting the decision. Bruce, 351 F.3d at 1287 (citing Superintendent v. Hill, 472 U.S. 445, 454 (1985)). Although discussed in the context of a disciplinary hearing, the Ninth Circuit has stated that under the Hill standard, the evidence should have some indicia of reliability. Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987).

Plaintiff was given notice of the charges and multiple opportunities to be heard and regularly attended hearings to review the validation decision. Nevertheless, Plaintiff asserts that his due process rights were violated.

Plaintiff contends that he received no advance notice that the drawings he possessed could be used to validate him as a gang member. Due process does not require advance notice of the consequence's of one's actions, regardless of the severity of those actions. Due process requires notice of the charges that have been leveled against one. Toussaint, 801 F.2d at 1100-01. Plaintiff does not allege that he had no

11

notice that he was being segregated based on his association with a gang. Rather, Plaintiff alleges that he should have received notice of the actions that might lead him to be classified as a gang associate. Due process requires no such notification.

Likewise, the fact that Plaintiff never received a Rules Violation Report does not run afoul of the Due Process Clause. Due process requires only that the prisoner be informed of the charges against him or the reasons for segregation. Id.

Plaintiff also alleges that the evidence relied on for validation does not adequately establish an association between Plaintiff and the Mexican Mafia. Plaintiff does not dispute that he possessed the drawings or Defendant Sanchez's determination that they contained Mexican Mafia imagery. Instead he asserts that he possessed these images without knowing of their gang relationship and, further, that they alone do not sufficiently link him to the Mexican Mafia.

The "some evidence" standard sets a low bar, consistent with the recognition that assignment of inmates within prisons is "essentially a matter of administrative discretion," subject to "minimal legal limitations." Bruce, 351 F.3d at 1287 (citing Toussaint, 801 F.2d 1080, with respect to the minimal limitations). A single piece of evidence may be sufficient to meet the "some evidence" requirement, if that evidence has "sufficient indicia of reliability." Id. at 1288; Cato, 824 F.2d at 705 ("relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board" (citing Hill, 472 U.S. at 455–56 (emphases in original)).

In applying this standard the court is not required to "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'"

12

Bruce, 351 F.3d at 1287 (citing Hill, 472 U.S. at 455–56).

Defendant Sanchez found multiple Mexican Mafia references in four pieces of artwork possessed by Plaintiff. Sanchez also concluded that two of the drawings were made by validated members of the gang. Even if Sanchez did not explain how he determined that two of the drawings were made by members of the gang, "'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Id. Sanchez explained how he determined the art contained gang imagery, a conclusion Plaintiff does not contest. Thus, the evidence used to validate Plaintiff satisfies due process.

Plaintiff may be able to state a cognizable due process claim based on his allegation that he is being denied meaningful periodic review. Plaintiff contends that his review hearings "are conducted in a rote and perfunctory manner, as the committees do not make any individualized finding as to whether or not Plaintiff is truly a gang member/associate . . . ." (Compl. at 8.) The Defendants allegedly refused to acknowledge evidence demonstrating that Plaintiff is not affiliated with the Mexican Mafia. (Id. at 10.) It is not clear from the Complaint how exactly the review hearings are superficial and which of the Defendants are responsible. Should Plaintiff choose to amend, he must specifically describe the hearings and why exactly he believes they are not meaningful. Plaintiff must also name the individuals responsible for providing him with reviews that were meaningless.

D.  **Eighth Amendment**

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain . . . ."

13

Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Id.; Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit, 682 F.2d at 1250 (9th Cir. 1982); Farmer v. Brennan, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the inmate must establish that prison officials were deliberately indifferent to a substantial risk of serious harm to the inmates's safety. Farmer, 511 U.S. at 834.  The deliberate indifference standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious . . . ." Farmer at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." Id. at 837.

Plaintiff alleges that the Defendants knowingly disregarded sufficiently serious risks of harm to Plaintiff caused by his validation.  As so validated, Plaintiff inherited the gang's enemies.  Moreover, because he refused to assimilate in the gang, he is now at odds with its members as well as its rival gangs. A failure to keep gangs and their enemies separate can create a substantial risk of serious harm. See, e.g., Noll v. Carlson, 809 F.2d 1446, 1449 n. 4 (9th Cir. 1987) (placing prisoner in prison with known enemies); Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986) (exposing prisoner to possibility of attack by other prisoners).

However, Plaintiff has failed to allege that a Defendant acted with deliberate indifference to the risks.

14

On June 5, 2008, Plaintiff told a classification committee composed of Warden Carrasco, Cpt. Zanchi, Sgt. Machado, Sgt. Ortega[1], and others of the risk of harm validation had caused. The Committee responded by placing Plaintiff in segregated housing. Plaintiff's allegations do not make clear where Plaintiff was housed after he was segregated. As pled, it appears the serious risk of harm was addressed. Plaintiff fails to explain why segregated housing is inadequate. Plaintiff has failed to state a cognizable Eighth Amendment claim. The Court will grant Plaintiff leave to amend.

In order to state a claim, Plaintiff must allege facts showing that Defendants knowingly disregarded a serious risk of harm. If Plaintiff was knowingly re-housed in a manner that exposed him to threat from gang members, he must allege as much. "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" Id. at 1057 (quoting Farmer, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)). Plaintiff must also set forth specific factual allegations demonstrating how each Defendant exhibited deliberate indifference. See Leer, 844 F.2d at 634.

### E.     First Amendment

Plaintiff contends that his First Amendment rights were violated but does not explain

---

[1] Sgt. Ortega is an alleged committee member but is not a named Defendant.

15

which of the Defendants perpetrated the violation and how. The Complaint fails to identify which First Amendment right Plaintiff is trying to vindicate. Although the Federal Rules adopt a flexible pleading policy, a complaint must give fair notice and state the elements of the claim plainly and succinctly. Jones v. Community Redev. Agency, 733 F.2d 646, 649 (9th Cir. 1984). The Court will grant Plaintiff an opportunity to clearly allege a First Amendment violation in an amended complaint.

Should Plaintiff choose to amend, he should consider that a prisoner possess only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Prison gangs in particular are fundamentally incompatible with inmate and staff safety. See, e.g., Wilkinson v. Austin, 545 U.S. 209, 227 (2005); Stewart v. Alameida, 418 F.Supp.2d 1154, 1161-64 (N.D. Cal. 2006) (prison regulation infringing on inmate's freedom of association constitutional); Stefanow v. McFadden, 103 F.3d 1466, 1472 (9th Cir.1996) (prison officials' actions affecting First Amendment rights are permissible when reasonably related to legitimate interest of prison security); Ruiz v. Cate, 2010 WL 546707, at *4 (N.D.Cal. Feb.10, 2010) ("The use of the artwork with a validated gang member's name on it for purposes of determining whether [plaintiff] was inactive in the gang did not violate his First Amendment rights.").

## V. **CONCLUSION AND ORDER**

Plaintiff's Complaint does not state a claim for relief under section 1983. The Court will grant Plaintiff an opportunity to file an amended complaint. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). If Plaintiff opts to amend, he must demonstrate that the alleged acts resulted in a deprivation of his constitutional rights. Iqbal, 129 S.Ct. at 1948-

16

49. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" Id. at 1949 (quoting Twombly, 550 U.S. at 555 (2007)). Plaintiff must also demonstrate that each named Defendant personally participated in a deprivation of his rights. Jones, 297 F.3d at 934.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purposes of adding new claims. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff should carefully read this Screening Order and focus his efforts on curing the deficiencies set forth above.

Finally, Plaintiff is advised that Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading. As a general rule, an amended complaint supersedes the original complaint. See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967). Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury. Plaintiff's amended complaint should be brief. Fed. R. Civ. P. 8(a). Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted).

Accordingly, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff (1) a blank civil rights complaint form and (2) a copy of his Complaint, filed April 8, 2010;

2. Plaintiff's Complaint is dismissed for failure to state a claim upon which relief

may be granted;

3.    Plaintiff shall file an amended complaint within thirty (30) days; and

4.    If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend this action be dismissed, with prejudice, for failure to state a claim and failure to comply with a court order.

IT IS SO ORDERED.

Dated:   August 30, 2012          /s/ *Michael J. Seng*
                                         UNITED STATES MAGISTRATE JUDGE