1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELVIN JOHN CABRERA, | CASE NO. 1:10-cv-00611-LJO-MJS (PC) |
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS (1) FOR SERVICE OF COGNIZABLE CLAIMS AGAINST DEFENDANTS GENTRY, SANCHEZ, SIGSTEN, BUECHNER, JAKABUSKY, AND KINGSTON IN FIRST AMENDED COMPLAINT, AND (2) TO DISMISS ALL OTHER CLAIMS AND DEFENDANTS WITH PREJUDICE** |
| v. | |
| THOMAS M. MADDOCK, et al., | |
| Defendants. | |
| | **(ECF NO. 15)** |
| | **FOURTEEN (14) DAY OBJECTION DEADLINE** |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this civil rights action brought pursuant to 42 U.S.C. § 1983.

The Court screened Plaintiff's complaint (ECF No. 1), and dismissed it for failure to state a claim, but gave leave to amend. (ECF No. 10.) Plaintiff's first amended complaint (ECF No. 15) is now before the Court for screening.

I.     **SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C.

1  § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has

2  raised claims that are legally "frivolous, malicious," or that fail to state a claim upon which

3  relief may be granted, or that seek monetary relief from a defendant who is immune from

4  such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion

5  thereof, that may have been paid, the court shall dismiss the case at any time if the court

6  determines that . . . the action or appeal . . . fails to state a claim upon which relief may

7  be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

8  **II.    PLEADING STANDARD**

9      Section 1983 "provides a cause of action for the deprivation of any rights,

10  privileges, or immunities secured by the Constitution and laws of the United States."

11  Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983).

12  Section 1983 is not itself a source of substantive rights, but merely provides a method for

13  vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94

14  (1989).

15      To state a claim under § 1983, a plaintiff must allege two essential elements: (1)

16  that a right secured by the Constitution or laws of the United States was violated and (2)

17  that the alleged violation was committed by a person acting under the color of state law.

18  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243,

19  1245 (9th Cir. 1987).

20      A complaint must contain "a short and plain statement of the claim showing that

21  the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations

22  are not required, but "[t]hreadbare recitals of the elements of a cause of action,

23  supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S.

24  662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

25  Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief

26  that is plausible on its face." Id. Facial plausibility demands more than the mere

27  possibility that a defendant committed misconduct and, while factual allegations are

28

1   accepted as true, legal conclusions are not. Id. at 677-78.

2   **III.     PLAINTIFF'S ALLEGATIONS**

3        Plaintiff is incarcerated at California Correction Institution ("CCI") in Tehachapi,

4   California, where the acts giving rise to his complaint occurred. He names the following

5   Defendants in their individual and official capacities: (1) Matthew Cate, Secretary of the

6   California Department of Corrections and Rehabilitation ("CDCR"); (2) CCI Warden

7   Fernando Gonzalez; (3) Lt. J. Gentry, CCI Gang Investigator; (4) Sgt. E. Sanchez, CCI

8   Gang Investigator; (5) Sigsten, CCI Institutional Gang Investigator; (6) M. Buechner,

9   Special Service Agent, Office of Correctional Safety ("OCS"); (7) D. Jakabusky, Special

10  Service Agent, OCS; and (8) B. Kingston, Special Service Agent, OCS.

11       Plaintiff's allegations may be summarized essentially as follows:

12       On April 3, 2008, prison guards on Plaintiff's yard were assaulted. Plaintiff was in

13  his cell during the attack and was not involved. The prison immediately was placed on

14  lockdown.

15       On April 8, 2008, Defendants Gonzalez and Cate dispatched gang investigators

16  to conduct an operation targeting Hispanic inmates on Plaintiff's yard. All Hispanic

17  inmates were removed from their cells, their tattoos were photographed, and their

18  property was confiscated.

19       Defendant Sanchez confiscated four photocopied drawings from Plaintiff's art

20  collection and, based on these items, assembled Plaintiff's gang validation package. The

21  package contained false information. It also did not comply with applicable provisions of

22  the California Code of Regulations because it did not document and disclose an

23  articulable factual basis for validating Plaintiff as a gang member, was assembled from a

24  single source (Plaintiff's art supplies), and contained no evidence linking Plaintiff to

25  illegal conduct or gang affiliates. The symbols used in Plaintiff's gang validation are

26  common to Meso-American cultures such as the Aztec, Mayan, Olmec, and Toltec

27  civilizations. One of the drawings was a photocopy from "Low Rider" magazine, a

28

3

1    publication not prohibited at any institution. Validating Plaintiff based on this artwork

2    constitutes an unconstitutionally overbroad application of the applicable regulations.

3           On April 11, 2008, Plaintiff and approximately thirty other Hispanic inmates were

4    removed from the general population and placed into Administrative Segregation.

5           On April 14, 2008, Defendant Sigsten conducted a pre-validation interview with

6    Plaintiff. During the interview, they discussed the four drawings found among Plaintiff's

7    belongings. Plaintiff informed Defendant Sigsten that the drawings were possessed for

8    artistic purposes in relation to Plaintiff's participation in the hobby craft program. Plaintiff

9    was unaware the drawings contained gang symbolism. Plaintiff did not know the original

10   artists, and one of the drawings was taken from a magazine permitted within the

11   institution. Plaintiff informed Defendant Sigsten that he had never been a gang member

12   or involved in gang activity. Defendant Sigsten recorded Plaintiff's statement but failed to

13   document Plaintiff's statement as to each source item. Defendants Gentry, Sanchez, and

14   Sigston failed to timely provide Plaintiff with a copy of the "recorded opinions," and failed

15   to "properly" forward Plaintiff's statement to the Office of Correctional Safety.

16          On April 16, 2008, Plaintiff appeared before an Institutional Classification

17   Committee ("ICC") for Administrative Segregation placement. Plaintiff does not state

18   which Defendants, if any, participated in the Classification Committee. Plaintiff contested

19   the source items that were being used to validate him and the accusation that he posed

20   a threat to institutional security.

21          On April 18, 2008, Defendant Gentry submitted Plaintiff's gang validation package

22   to OCS. A copy of the gang validation package was not sent to Plaintiff. Defendants

23   Gentry and Sanchez later created a fake document stating Sanchez, rather than

24   Sigsten, interviewed Plaintiff and recorded his statements.

25          Defendants Buechner, Jakabusky, and Kingston failed to conduct a "quality

26   review" of the gang validation package. On May 13, 2008, Plaintiff was validated as an

27   associate of the Mexican Mafia Prison Gang.

28

On June 5, 2008, Plaintiff appeared before another ICC for program review. Plaintiff submitted an emergency appeal stating that the improper gang validation had effectively forced him to be an associate of a prison gang and jeopardized his life. Plaintiff was told to submit an autobiography and was rehoused.

On June 12, 2008, Plaintiff submitted a second inmate appeal.

On August 14, 2008, Plaintiff appeared before another ICC for Security Housing Unit ("SHU") placement. Plaintiff requested a polygraph but it was denied.

On September 1, 2008, Plaintiff submitted an inmate appeal regarding his request for a polygraph, and his claims of retaliation and racial discrimination.

On September 11, 2008, Plaintiff submitted an inmate appeal regarding due process violations.

On November 3, 2008, Plaintiff was interviewed by IGIs Crouch and Hutchins, who are not named as Defendants in this action. Plaintiff brought with him Mexican/Aztec drawings and informed Crouch and Hutchins that he was not aware that this type of art is considered gang related because it is allowed in the institution without warnings or restrictions. Crouch and Hutchins informed Plaintiff he could get into further trouble for the art he brought to the interview. Plaintiff informed them that he had never been involved with gangs. Crouch and Hutchins stated that they did not believe Plaintiff was a gang member or associate, and that Plaintiff would not have been validated if investigators had not been sent down from Sacramento. They informed Plaintiff that all of the Hispanic inmates removed from general population were going to be validated and that Sacramento "wanted it done fast." They also explained that gang investigators do not specify what art is prohibited so they can catch individuals who choose to possess it. Plaintiff informed them he did not receive a copy of his pre-validation statement and all of his documents had been discarded during a cell search. He informed them his views were not properly presented to the Office of Correctional Safety. He requested a polygraph. His request was denied.

On February 10, 2009, Plaintiff appeared before another ICC. Plaintiff stated that he had never been a member or associate of any gang. He never requested to "debrief" because he had no gang information. He submitted a fifteen page autobiography that detailed his life and crimes. The ICC stated his autobiography was insufficient but did not provide a reason why. The ICC did not explain why Plaintiff would not be permitted to submit to a polygraph or otherwise challenge his gang validation. Plaintiff complained that his gang validation was based on art that was allowed into the institution and there was no direct link shown between Plaintiff and any of the artists. Plaintiff was retained in SHU.

Plaintiff claims that his gang validation violated his rights under the First, Eighth, and Fourteenth Amendments, as well as the California Code of Regulations and the settlement agreement in Castillo v. Alameida, No. C-94-2847-M-JCSJJ, (N.D. Cal. 2004). He seeks unspecified declaratory and injunctive relief, as well as compensatory and punitive damages.

The Court takes judicial notice that, subsequent to the filing of the instant complaint, the California Court of Appeal for the Fifth District overturned Plaintiff's gang validation for failing to comply with the applicable regulations. In re Cabrera, 15 Cal. Rptr. 3d 121 (Cal. App. 2013). Pursuant to that decision, Plaintiff's gang validation was expunged, and the California Department of Corrections and Rehabilitation was ordered to cease housing Plaintiff in the security housing unit based on gang validation. Id. at 135.

IV.    ANALYSIS

A.    Due Process

Plaintiff alleges that Defendants Gentry, Sanchez, Sigsten, Buechner, Jakabusky, and Kingston improperly validated Plaintiff as a gang associate in violation of Due Process without satisfying the "some evidence" standard and California regulatory requirements.

6

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466 (1983). The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of segregation. See id. at 466-68. Liberty interests created by state law are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484 (1995).

Assignment to the SHU is an administrative measure rather than a disciplinary measure and is "essentially a matter of administrative discretion." Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997)). To satisfy due process, the administrative segregation process must include an informal non-adversary hearing within a reasonable time after being segregated, notice of the charges or the reasons segregation is being considered, and an opportunity for the inmate to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir.1986), overruled on other grounds by Sandin v. Connor, 515 U.S. 472, 481 (1995).

The administrative determination also must meet the "some evidence" standard of Superintendent v. Hill, 472 U.S. 445, 455 (1985). Bruce, 351 F.3d at 1287-88. Because the standard for "some evidence" is not high, a court need only decide whether there is any evidence at all that could support the prison officials' administrative decisions. Id. at 1287-88. A reviewing court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence." Id. at 1287. However, the evidence supporting the administrative determination must bear "some indicia of reliability." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (citations omitted). California regulations requiring three source items for gang validation do not dictate the outcome of the federal

7

1  due process analysis. A single piece of evidence that has sufficient indicia of reliability

2  can be sufficient to meet the "some evidence" standard. Bruce, 351 F.3d at 1288.

3       As an initial matter, Plaintiff was given notice of the charges and multiple

4  opportunities to be heard regarding the validation decision. Thus, his allegation that

5  certain procedural protections were not afforded to him fails to state a Due Process

6  claim. Plaintiff also argues that various procedural and substantive aspects of the

7  California Code of Regulations were violated. As stated, however, California regulations

8  do not dictate the outcome of the federal due process analysis. Nor do the Title 15

9  regulations governing the conduct of prison officials entitle an inmate to sue civilly for

10  their violation. See e.g., Vasquez v. Tate, No. 1:10-cv-1876-JLT (PC), 2012 WL

11  6738167, at *9 (E.D. Cal. Dec. 28, 2012); Davis v. Powell, 901 F. Supp. 2d 1196, 1211

12  (S.D. Cal. 2012). Accordingly, Plaintiff's allegation that regulations were not followed,

13  standing alone, fails to state a claim.

14       However, the Court is satisfied that Plaintiff has alleged sufficient facts to call into

15  question whether there was "some evidence" to support his gang validation. Plaintiff was

16  validated based on four pieces of artwork. In overturning Plaintiff's gang validation, the

17  California Court of Appeals concluded that two of these items – drawings made by

18  validated members of the gang – were insufficient to directly link Plaintiff to the gang as

19  required under the California Code of Regulations. Although not based on federal law,

20  the Court finds the California court's analysis sufficient at the pleading stage to call into

21  question whether these two items bore any reasonable indicia of reliability and thus

22  whether they were sufficient under the federal "some evidence" standard.

23       The remaining two items used in Plaintiff's validation were pieces of art containing

24  alleged gang imagery or symbols. According to Plaintiff, at least one of these images

25  was taken from a magazine permitted within the institution. There is nothing in the

26  pleading to indicate that these images would have been sufficient to support an

27  administrative official's decision to validate Plaintiff as a gang associate, absent the other

28

1   artwork found insufficient by the California Court of Appeals. Nor can this Court make

2   such a conclusion without reweighing the evidence.

3          Accordingly, the Court finds that Plaintiff's allegations are sufficient at the pleading

4   stage to state a Due Process claim on the ground his gang validation was not based on

5   "some evidence." The Court will recommend that Plaintiff be permitted to proceed

6   against Defendants Gentry, Sanchez, Sigsten, Buecher, Jakabusky, and Kingston on his

7   due process claim.

8          **B.    Equal Protection**

9          Plaintiff attempts to allege an Equal Protection claim on the ground that he was

10  validated during a campaign targeting Hispanic inmates.

11         The Equal Protection Clause requires that persons who are similarly situated be

12  treated alike. City of Cleburne, Tex. v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439

13  (1985). An equal protection claim may be established by showing that the defendant

14  intentionally discriminated against the plaintiff based on the plaintiff's membership in a

15  protected class, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of

16  Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were

17  intentionally treated differently without a rational relationship to a legitimate state

18  purpose, Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); see also Lazy Y

19  Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of

20  Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

21         The facts alleged by Plaintiff indicate that he and other inmates were targeted for

22  gang validation in response to an attack on correctional staff. Although all of the inmates

23  subjected to the investigation were Hispanic, the facts alleged do not indicate that they

24  were discriminated against based on their membership in this protected class. Serrano,

25  345 F.3d at 1082 ("Intentional discrimination means that a defendant acted at least in

26  part because of a plaintiff's protected status.") (quoting Maynard v. City of San Jose, 37

27  F.3d 1396, 1404 (9th Cir. 1994)). To the contrary, the facts suggest that correctional

28

9

1   officers were concerned with the conduct of a particular Hispanic gang (the Mexican

2   Mafia) and targeted inmates for investigation based on this concern. Accordingly,

3   Plaintiff's allegations fail to state an equal protection claim.

4          Plaintiff previously was advised of this defect and failed to cure it. This failure is

5   reasonably construed as reflecting his inability to do so. Leave to amend this claim

6   appears futile and should be denied.

7          **C.      Retaliation**

8          Plaintiff alleges that he was validated in retaliation for the attack on correctional

9   staff.

10          "Within the prison context, a viable claim of First Amendment retaliation entails

11   five basic elements: (1) An assertion that a state actor took some adverse action against

12   an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4)

13   chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

14   reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559,

15   567-68 (9th Cir. 2005).

16          An attack on correctional staff is not protected conduct, and adverse action taken

17   against Plaintiff in response to such conduct therefore does not state a claim for

18   retaliation. Furthermore, the institution's attempt to identify gang members in response to

19   such an attack indisputably advances legitimate correctional goals. Accordingly,

20   Plaintiff's allegations fail to state a claim for retaliation.

21          Leave to amend this claim appears to be futile and should be denied.

22          **D.      Cruel and Unusual Punishment**

23          The Cruel and Unusual Punishments Clause of the Eighth Amendment protects

24   prisoners from inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825,

25   832 (1994). A conditions of confinement claim has both an objective and a subjective

26   component. See Farmer, 511 U.S. at 834. "First, the deprivation alleged must be . . .

27   sufficiently serious," and must "result in the denial of the minimal civilized measure of

28

1   life's necessities." Id.  "[E]xtreme deprivations are required to make out a conditions-of-

2   confinement claim." Hudson, 503 U.S. at 9. Second, the prison official must have acted

3   with "deliberate indifference" to a substantial risk of serious harm to the inmate. Farmer,

4   511 U.S. at 834. "Mere negligence is not sufficient to establish liability." Frost v. Agnos,

5   152 F.3d 1124, 1128 (9th Cir. 1998). Rather, a plaintiff must set forth facts to show that a

6   defendant knew of, but disregarded, an excessive risk to inmate safety. Farmer, 511

7   U.S. at 837. That is, "the official must both be aware of facts from which the inference

8   could be drawn that a substantial risk of serious harm exists, and he must also draw the

9   inference." Id.

10      Plaintiff alleges that the Defendants knowingly disregarded serious risks of harm

11  to Plaintiff caused by his validation. Once validated, Plaintiff inherited the gang's

12  enemies. Moreover, because he refused to assimilate in the gang, he is now at odds

13  with its members as well as its rival gangs. A failure to keep gangs and their enemies

14  separate can create a substantial risk of serious harm.  See, e.g., Noll v. Carlson, 809

15  F.2d 1446, 1449 n. 4 (9th Cir. 1987) (placing prisoner in prison with known enemies);

16  Berg v. Kincheloe, 794 F.2d 457, 460-61 (9th Cir. 1986) (exposing prisoner to possibility

17  of attack by other prisoners). However, Plaintiff alleges that he was rehoused following

18  his complaints to prison officials regarding his safety. He does not state any other facts

19  that would support a conclusion that he was subject to a risk of harm.

20      Accordingly, Plaintiff's allegations fail to state a cognizable Eighth Amendment

21  claim. Plaintiff previously was advised of the legal standards applicable to this claim and

22  given an opportunity to cure these deficiencies. He failed to do so. Leave to amend

23  reasonably appears futile and should be denied.

24      **E.    Conspiracy**

25      Plaintiff claims that Defendants conspired to validate him in violation of his

26  constitutional rights.

27

28

11

1        To state a claim for conspiracy under section 1983, Plaintiff must show the

2   existence of an agreement or a meeting of the minds to violate his constitutional rights,

3   and an actual deprivation of those constitutional rights.  Avalos v. Baca, 596 F.3d 583,

4   592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001). Although

5   accepted as true, the factual allegations of the complaint must be sufficient to raise a

6   right to relief above the speculative level. Twombly, 550 U.S. at 555. A plaintiff must set

7   forth "the grounds of his entitlement to relief," which "requires more than labels and

8   conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Id. As

9   such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights

10  will not suffice to give rise to a conspiracy claim under section 1983.

11       Plaintiff has not alleged sufficient facts to raise his conspiracy claim beyond the

12  speculative level. Accordingly, his conspiracy claim is not cognizable.

13       **F.**    **Supervisory Liability**

14       Plaintiff claims that Defendants Cate, Gonzalez, and Gentry had actual

15  knowledge of the violations of Plaintiff's rights and failed to act to correct them. He also

16  alleges that these Defendants, as well as Defendant Buechner, failed to properly train

17  subordinates.

18       Under § 1983, Plaintiff must demonstrate that each named defendant personally

19  participated in the deprivation of his rights. Iqbal, 556 U.S. 662, 676-77 (2009); Simmons

20  v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton,

21  588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir.

22  2002). "A person subjects another to the deprivation of a constitutional right, within the

23  meaning of § 1983, if he does an affirmative act, participates in another's affirmative

24  acts, or omits to perform an act which he is legally required to do that causes the

25  deprivation of which complaint is made. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.

26  1978).

27

28

Liability may not be imposed on supervisory personnel under the theory of respondeat superior, as each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 676-77; Ewing, 588 F.3d at 1235. Supervisors may only be held liable if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009); Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1182 (9th Cir. 2007); Harris v. Roderick, 126 F.3d 1189, 1204 (9th Cir. 1997).

Plaintiff alleges no facts to support a conclusion that Defendants Cate and Gonzalez were aware of any deficiencies in Plaintiff's gang validation process. Nor does he allege facts to indicate that Defendant Gentry was aware of any violations in the gang validation process, other than, perhaps, his own. No facts are alleged to indicate that any of these Defendants were responsible for training others in gang validation procedures. Accordingly, Plaintiff has failed to state a claim against these Defendants in their supervisory capacities.

### G.    Vague and Overbroad Regulations

Plaintiff alleges, generally, that the regulations governing gang validation issues – and particularly key terms in the gang validation process – are vague and overly broad. Although not entirely clear, Plaintiff appears to challenge the regulations defining "gang activity," "gang," "direct link," "symbol," and "association," as not providing him with adequate notice of the conduct that was prohibited.

In Castro v. Terhune, 712 F.3d 1304, 1311-13 (9th Cir. 2013), the Ninth Circuit upheld against a challenge for definiteness the regulations governing the use of source items to validate inmates as gang associates. The Ninth Circuit concluded that the regulations "would have clearly indicated to [the inmate] that his conduct could be used as evidence in support of validation." Id. at 1311. As in this case, the inmate in Castro also possessed artwork containing symbols and imagery associated with the Mexican

1   Mafia. In essence, the Ninth Circuit concluded that such artwork was prohibited by the

2   regulations with sufficient definiteness to preclude a vagueness challenge. Additionally,

3   there is extensive case law on the use of Mayan symbols, including the symbols at issue

4   here, as they relate to gangs. E.g., Treglia v. Dir. of California Dep't of Corr., No. 2:09–

5   cv–352 KJN P., 2010 WL 4905741, at *5 (E.D. Cal. Nov. 24, 2010); Ruiz v. Fischer, No.

6   C 07–326 MHP, 2010 WL 4807052, at *2 (N.D. Cal. Nov. 18, 2010); Castro v. Horel, No.

7   C 09–04902 WHA, 2010 WL 1486470, at *1 (N.D. Cal. April 13, 2010); Aquillon v.

8   Evans, No. CV 08–1748–SJO (OP), 2010 WL 2384861, at *26 (C.D. Cal. March 15,

9   2010); Hernandez v. Horel, Nos. CV 08–2737–SJO (OP), CV 07–6507–SJO (OP), 2010

10  WL 1438936, at *7 (C.D. Cal. Mar. 2, 2010). Accordingly, Plaintiff's vagueness challenge

11  fails.

12       Overbreadth involves

13           the constitutional principle that "a governmental purpose to
14           control or prevent activities constitutionally subject to state
             regulation may not be achieved by means which sweep
15           unnecessarily broadly and thereby invade the area of
             protected freedoms." A vague statute may be overbroad if its
16           uncertain boundaries leave open the possibility of
             punishment for protected conduct and thus lead citizens to
17           avoid such protected activity in order to steer clear of the
             uncertain proscriptions. A statute is also overbroad, however,
18           if, even though it is clear and precise, it prohibits
19           constitutionally protected conduct.

20  Karlan v. Cincinnati, 416 U.S. 924, 925 (1974); see also Aptheker v. Secretary of State,

21  378 U.S. 500, 508 (1964) (noting that, "'[e]ven though the governmental purpose be

22  legitimate and substantial, that purpose cannot be pursued by means that broadly stifle

23  fundamental personal liberties when the end can be more narrowly achieved'").

24       Plaintiff does not identify which protected freedoms he believes are infringed by

25  the allegedly overbroad regulations. His claims that the regulations failed to provide him

26  adequate notice and therefore violate due process are properly construed as a

27  vagueness challenge, rather than overbreadth. Although not precisely stated, he may be

28  attempting to allege that his free speech rights are implicated by broad prohibitions on

14

the possession of Meso-American symbols. However, he does not propose how legitimate penological objectives may be achieved by more narrow prohibitions when such symbols have been appropriated by known prison gangs.

Accordingly, Plaintiff's allegations of vagueness and overbreadth fail to state a claim.

### H.      Injunctive Relief

In light of the decision voiding Plaintiff's gang validation in In re Cabrera, 158 Cal. Rptr. 3d at 135, Plaintiff's claims for injunctive relief are moot.

### I.      Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n.8 (9th Cir. 2005). Therefore, this action properly proceeds as one for damages only.

### J.      Official capacity

Plaintiff names each of the Defendants in their individual and official capacities.

Plaintiff cannot recover money damages from state officials in their official capacities. Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). Official capacity suits may seek only prospective relief. See Wolfson v. Brammer, 616 F.3d 1045, 1065-66 (9th Cir. 2010). As stated above, Plaintiff's claims for prospective relief are not moot.

Accordingly, Plaintiff cannot proceed against Defendants in their official capacities. Leave to amend official capacity claims would be futile and should be denied.

### K.      Castillo v. Alameida Settlement Agreement

Plaintiff claims that his gang validation violated the provision of the settlement agreement in Castillo. The Court takes judicial notice of the settlement agreement. The agreement called for the California Department of Corrections and Rehabilitation to

make changes to policies and procedures used to validate inmates as gang members or associates. It did not vest any rights in Plaintiff, who was not a party to that action. Finally, even if Plaintiff was a party to <u>Castillo</u>, a settlement agreement does not provide a right secured by the Constitution or laws of the United States, and thus does not provide a basis for a section 1983 claim.

Leave to amend this claim would be futile and should be denied.

**V.    CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is HEREBY RECOMMENDED that:

1.    Plaintiff proceed on his Fourteenth Amendment Due Process claim for money damages against Defendants Gentry, Sanchez, Sigsten, Buechner, Jakabusky, and Kingston, in their individual capacities;

2.    All other claims asserted in the first amended complaint and all other named Defendants be dismissed with prejudice,

3.    Service be initiated on the following Defendants:

**LT. J. GENTRY** – CCI Gang Investigator,

**SGT. E. SANCHEZ** – CCI Gang Investigator,

**SIGSTEN** – CCI Gang Investigator,

**M. BUECHNER** – Special Service Agent, OCS,

**D. JAKABUSKY** – Special Service Agent, OCS, and

**B. KINGSTON** – Special Service Agent, OCS.

4.    The Clerk of the Court should send Plaintiff six (6) USM-285 forms, six (6) summons, a Notice of Submission of Documents form, an instruction sheet and a copy of the first amended complaint filed November 15, 2012;

5.    Within thirty (30) days from the date of adoption of these findings and recommendations, Plaintiff should complete and return to the Court the notice of submission of documents along with the following documents:

a.    Completed summons,

b.    One completed USM-285 form for each Defendant listed above,

c.    Seven (7) copies of the endorsed first amended complaint filed November 15, 2012; and

6.    Upon receipt of the above-described documents, the Court should direct the United States Marshal to serve the above-named Defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within fourteen (14) days after being served with the findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." A party may respond to another party's objections by filing a response within fourteen (14) days after being served with a copy of that party's objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:    June 1, 2015          /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE

17